case will be 083312 Delaney v. The Department of Transportation. Good morning, your honors. If it pleases the court, my name is David Feather and I represent the petitioner here in Mr. Kevin Delaney. Your honors, we believe that the MSPB made a number of fundamental, both pre-hearing and at the hearing decisions, which violated my client's guarantee of a full and fair consideration of his case, which he has pursuant to 5 U.S.C. Section 7701. Specifically, the administrative law judge precluded the testimony of two very key witnesses. The first is Mr. Christopher Picola. He was a fellow air traffic controller. Mr. Picola was also put on administrative leave, as was my client in July of 2005, terminated in October of 2005, and reinstated in December 2005 pursuant to a stipulated award. Mr. Picola was going to testify regarding the fact that when he returned to work, he had a conversation with Ms. Terry Tracy, a member of management, in fact, the head of the Human Resources and Administration at the New York Trade Con, in which she told him that he was medically decertified. And this is important because that is the same exact thing that she told my client when he returned to work, which at the hearing, she denied. In fact, at a pre-hearing submission, the agency, the Department of Transportation, agreed that she told my client that he was medically unable to perform safety-related duties. That's working radar. When you can't work radar, you have to work flight data, if it's available. You can't work on the scopes, as they call them. She denied that, and the administrative law judge stated in his decision that it was a he said, she said scenario. If he had allowed the testimony of Mr. Picola, he would have testified that he was also told by Ms. Tracy that he was medically decertified and not allowed to work safety-related duties. Mr. Picola also called the flight surgeon, Dr. Jordan, shortly after Ms. Tracy told him he was medically decertified, spoke to a representative of the flight surgeon's office who told him, absolutely not. You're not medically decertified. You can work radar. My client didn't make that call because he trusted what Ms. Tracy told him. And I think it's important whether or not my client was medically decertified for a number of reasons. Number one, when you're medically decertified, the administrative law judge said, it's no big deal. You still have work available to you, working flight data, which is pulling strips and doing kind of clerical work. That's true if there's work available, number one. Number two, when you're medically decertified, you're basically done as a controller. They pull your license. The burden is now on you to prove that you are medically certified. Mr. Delaney, the he was medically decertified for nine months. It took three or four letters from his physicians. It took his union getting involved. It took lower levels of management getting involved to get him his medical decertification. At that time, he was a whisper away from being medically retired, which occurs if you're medically decertified for a period of time. The other reason it's important as to whether or not Ms. Tracy medically decertified my client is because she did not have the authority to medically decertify him. He wasn't, in fact, medically decertified. We found that adding up to the fact. The question is, why did she tell him that? But wasn't he medically at some question because he hadn't filled in the form question, the question on the form that was required in order for him to have the medical certification required? Well, not necessarily, Your Honor. Yes and no. Mr. Delaney suffered from kidney stones. He was medically qualified, but every couple of years he had to handle a letter from his doctor. In fact, he had received a letter in July of 2005, right before he was put on administrative leave, given 30 days to get that letter. In the past, he's gotten extensions of that to get a letter from his doctor to the flight surgeon saying everything's okay with his kidney stone status quo. In this case, he's handed a current status report and the form 8500, which he had failed to check off a box and he was told you're medically decertified. A lot different than having to just get a letter from his doctor or check off a box. She told him medically decertified. It's a different category and it connotes an entirely different thing than having to fill out the form correctly and get it back to him. We also assert that the administrative law judge made a mistake by not allowing the testimony. I'm not sure I understood all of your answers to Judge Greger's question. Are you suggesting it was just an oversight that box wasn't checked in? I mean, it sounded to me from looking at the evidence that that was an intentional step. No, absolutely not. In fact, and I don't want to get into too much into another matter that's being handled in the Eastern District of New York. My client was, along with 10 other controllers, was suspended and then terminated for failing to check off a box on a medical form. The reason they failed to check that off was because they believed the box said, have you seen any doctors in the last year? And either you check yes or no. They believed that if it had been a part of something the FAA already knew of, for example, if they had filed all the correct workers' comp forms and they filed everything, those individuals failed to check off that box. It was not intentional. In fact, the argument- Wait, wait, wait. You say it was an oversight that he didn't check off the box or he was not checking off the box because he had what he thought to be a very good reason not to check? He had a very good reason. So it wasn't an oversight. It was intentional. Oh, yes. Okay. That was my question. I'm sorry, Your Honor. Yes. He believed, as did the other air traffic controllers, that if the FAA knew about this in a different format, whether through workers' comp or something else, it wasn't necessary to list that visit to the doctor. Well, he may have believed that, but of course, he was not the governing agency. And by failing to check that off, did he not put in question his medical qualifications to serve at the scope, as you use it, or in a safety-related role, as the agency seems to- Well, there's two things, Your Honor. In July of 2005, when he received this current status report, he was told he has 30 days to fill it out and get it back. When he was handed this form 8500, he wasn't told, check off the box, and then you'll be able to work radar again. He was told you're medically decertified. That connotes a- Well, what he was told was a question of fact that was at issue, wasn't it? And that would have been resolved, or hopefully resolved, if Mr. Pecola had been given the opportunity to testify as well. That's my point. It becomes less of a question of fact if there's two people saying that they heard the same thing from this woman, as opposed to he said, she said. It would have completely changed the dynamics of that, in my opinion. But you said she didn't have this authority. She did not. And that was not true in the first place. It was not true in the first place. Isn't he responsible for knowing the authority of the people he's dealing with? You are not told you're medically decertified by the flight surgeon. You're told by your supervisor. This flight surgeon tells your supervisor, who then passes along to you. So when you hear from your supervisor you're medically decertified, you don't pick up the phone and call the flight surgeon and say, is this true? I thought his supervisor was Mr. King. His supervisor was Mr. King, except when all of these air traffic controllers were first returned in December of 2005. They were put under the supervision for a limited time by, of Ms. Terry Tracy, because they had to get current, they had to get retrained, they had missed quite a bit of time of work. Recertified. No, they had to become current on the radar, which you have to do some classroom work, you have to have what's called an over the shoulder. They also need to have some sort of updated medical? Some of them did. Some of them did. The others, other than Mr. Delaney and Mr. Pecola, were told that they just, some of them just had to get a note from their doctor saying, again, status quo, if they had pre-existing conditions. But Mr. Delaney and Mr. Pecola were told they were medically decertified. Okay. Anything else on that issue? Mr. Barbarella was the union president for the New York region. He would have testified as to a couple of things. First of all, he assisted Mr. Delaney in 2000 and 2001 when Mr. Delaney, it took him nine months to get his medical recertification back after he was decertified. He would testify that it took a personal meeting between himself, other union members, and the flight surgeon. Again, after a voluminous amount of work by Mr. Delaney and his doctors to get him medically recertified, Mr. Barbarella finally was able to have that done. So he would testify as to that. He would also testify as to this form 8500, where the stipulated award that was entered into after the arbitration in December of 05 stated that no adverse action could be taken against these controllers for former 8500s. And again, he would testify that by medically decertifying Mr. Delaney based on this failure to check off the box, he was being punished. He was being disciplined for a prior form 8500. Now, the administrative law judge relied on- A prior form 8500? I thought this was a new form 8500. No, this was one that had been filled out in June of 2005. This was his last form 8500 right before he was put on administrative leave and ultimately terminated. So it did relate back to- The one that wasn't filled in. Exactly. Exactly. And the administrative law judge relies on the stipulated award and comes to the conclusion that medically decertifying Mr. Delaney or not letting him work safety-related duties was not a violation of the stipulated award. Mr. Barbarella is the one who negotiated this agreement. It's completely arbitrary and capricious to make a decision for the administrative law judge to make a decision that this was not a violation of the stipulated award without at least hearing from the individual who helped negotiate this award. And he could have stated why he believed that it was a violation of that stipulated award. I think both of these cannot be seen as procedural, as harmless, especially since Mr. Delaney bore the burden of proving that the MSPB had jurisdiction over his claim of a constructive discharge. There's also the issue that Mr. Delaney was not given certain discovery regarding other leaves without pay. Mr. Delaney had requested a leave without pay first two months and then four days a week, two days a week, three days a week, one day a week, and he was told that he was never given an answer to that. So there was a request from Mr. Delaney's counsel for other requests for leave. It was a broad request. The administrative law judge narrowed it down to just the New York trach on with a short time period. There was only one, which was Miss Tiffany King. It took a while for the air traffic manager to make a decision on her. And so I believe that it was a mistake to not give Mr. Delaney and his counsel a broader number of individuals who had requested leave. That was compounded by the fact that the administrative law judge relied heavily on the decision with regard to this other air traffic controller. It took two months to act on her request for leave without pay. And the administrative law judge said, well, there you go. It took two months. So therefore, this three or three and a half week delay for Mr. Delaney wasn't so bad. You can't take a group of one and compare it to my clients. It's apples and oranges. So the first mistake was not giving Mr. Delaney certain material, a broader scope of individuals who asked for leave without pay. And the second problem was not was using that one other example as some kind of litmus test for his conclusion that it was not unreasonable. This three and a half week delay for Mr. Delaney was not unreasonable. Help me understand the delay time. I'm a little confused about that. My reading of the record is that his request for delay, I'm sorry, for leave, his request for unpaid leave, which he eventually put in writing as they require, was recorded as being received by the agency on January 3rd stamp. But he resigned on January 4th. Now, that's a practically zero time for the agency to have acted on that request. I don't understand the reference to a three week. He made the request on December 13th, Your Honor. This is the oral versus the written. The oral. He wasn't told it had to be in writing until December 22nd, I believe he's told. Oh, by the way, you have to make that in writing. He assumed it was all right. This just has to make it official. He thought his supervisor, whom he was told to speak to, was talking to the air traffic manager who was going to make that decision. So he puts it in writing on December 26th, waits another week or so. Meanwhile, calls are being made by him and his union. He's getting no response. He's supposed to return to work on January 4th. Between December 26th and January 3rd, there was apparently some delay in getting that document in. What was that problem? No, December 22nd, he was told it had to be in writing. He got that in on December 26th. But he wasn't told for over a week that it had to be in writing, even though he had called his supervisor on a number of occasions, as had his union. Then he puts it in and then it's another week. Then they say, well, you know, it's busy. It's the holiday season. They knew he had to return. In testimony, Mr. Hillary King, his supervisor, had acknowledged that time was of the essence, and yet they sat on this for almost three weeks. If I may, Your Honor, there's also the question of whether or not the MSPB has jurisdiction. I think we can rely on your briefs on that, but you've used your time. We'll give you a couple of minutes when we bubble. Thank you. Respect? May it please the Court. Your Honor, we believe that there's been no evidence that Mr. Delaney's resignation was anything other than voluntary. Mr. Delaney's attorney has brought up three issues. The first is the testimony of Mr. Picola and Mr. Barbarella. We believe that the fact that they were not allowed to testify had no appreciable outcome on the effectiveness on the testified on the issues that Mr. Picola would have testified on according to the submission that they gave you about what he would have said. Mr. Owens, was there other evidence on testimony on that issue? Mr. Picola's processing and how he was brought back into the agency is irrelevant to Mr. Delaney. Evidence was presented in the course of the hearing about the medical requirements for the FAA, the requirements that a Form 8500 be completed. Also, additional testimony was presented that Mr. Delaney was previously aware there was a problem with this Form 8500.8, and that was presented to him in July. The settlement agreement reflects the fact that there was a letter of reprimand placed in his file at the time he was reinstated because he had previously left off information from his Form 8500.8. And also, Dr. Jordan testified that it was required that he have this form completed in order to resume safety-related duties. But none of that responds, I don't think, directly to counsel's argument that the issue was whether Ms. Tracy said you are medically decertified or not. Well, how does that bear on all this? He's arguing that Picola would have said that I was told by Ms. Tracy I was medically decertified, and somehow that bears on the status of Mr. Delaney, and there's a big issue about that. Can you clarify the government's position on all of that debate? We disagree that the issue is that that is, in fact, a significant issue. Put simply, Ms. Tracy is not the person who is in a position to medically decertify Mr. Delaney. We understand that, but would her having said to Mr. Delaney, would that have been relevant to anything? Well, Your Honor, Ms. Tracy gave Mr. Delaney a letter. The letter said that you were missing item 19, and the letter said that you need to get a current status report to fix that. The evidence in the record at the time was that Mr. Delaney was temporarily medically decertified. Once he got the current status report, he would be able to return to work. And this was also further supplemented by evidence in the record that this is, in fact, what happened to Mr. Delaney. He was temporarily medically decertified, and then he was allowed to come back to work. So the government's position is that, Ms. Tracy, if she, in fact, said you were decertified, was accurate in so saying? We don't believe that she told him he was decertified. But had she's accepting the appellant's position on this, you're saying that that would have been an accurate statement? Well, there's a difference between being medically decertified in terms of a permanent... I understand, but medically decertified... If medically decertified can encompass both temporary and permanent, and presumably if it doesn't have an adjective in front of it, it would, that what she said was accurate, in your view, if she said it? Well, again, I think in looking at the context, it was a temporary decertification based upon... I'm looking for a yes or a no. If she said you are medically decertified, and if, except my assumption, that that would encompass both temporary and permanent decertification, is it the government's position that what she said, or is alleged to have said, would be accurate? It was decertified. Again, I think you have to look at it in terms of being temporary or permanent, and there were two... Judge Bryson is saying, if she had said to him, you are temporarily decertified, would that have been a correct statement? Yes. The other issue that Mr. Delaney's attorney has raised is the testimony of Mr. Barbarella. We believe that that would not have had any impact on the outcome of this case. Mr. Barbarella's duplicate... Again, there was a settlement agreement that was in the record. The settlement agreement specifically said that they were to be reinstated, but at the same time, the settlement agreement did not say that the FAA had to disregard its medical regulatory criteria. In addition... Do you happen to know what the nature of that settlement agreement was? The settlement agreement is in the record, Your Honor. It is at A145 to 147. And could you summarize it in 30 seconds? The settlement agreement essentially reinstated these 11 employees had been removed pursuant to an internal investigation, and this settlement agreement allowed them to return to work and to be made whole in terms of pay and benefits that they would have lost. Okay. But again, it is the government's position that the settlement agreement could not set aside the obligation and the duty of the FAA to ensure the health and safety of the flying public. And the third issue that Mr. Delaney's attorney brought up was with respect to the leave without pay issue. We maintained that the amount of time Mr. Delaney was at work between December the 12th, 2005, and January the 4th, 2006, was approximately 23 days. 15 of those days were actual working days and not holidays or weekends. Looking at this amount of time, a reasonable person simply would not have felt compelled to resign, especially given the fact that the request was placed in writing on December the 26th. In addition, the testimony that Mr. Delaney was allowed to present related to the one employee who was supervised by someone who was directly under Mr. Delaney's supervision, and it was more than adequate to address the constructive discharge claim that the court was addressing, that the MSPB was addressing at the time. You're at the very end of your brief, you raised the jurisdiction, well, a second jurisdictional issue in this case, asserting that the fact that the case is pending in the district court barred Mr. Delaney from going into the MSPB, as I understand your argument. Yes, Your Honor. My understanding was the timing was the reverse. He went to the MSPB first and then went to the district court. Yes, Your Honor, that's correct. Why would the jurisdictional problem not be a problem for the district court proceeding since by hypothesis you can only proceed in one? Why wouldn't it be the case that the first place you go, even assuming that the two actions are identical, why wouldn't he still be able to proceed in the MSPB, although he might not be able to proceed in the district court? Well, Your Honor, the way the case has, as an initial matter, we believe that the MSPB's decision is sufficient and should be affirmed. This jurisdictional issue was brought up only as a secondary issue. Yeah, I know, but you brought it up, and since it's jurisdictional, it's something that we have to pay attention to, and what I'm trying to see here is whether there's any merit to it. Well, Your Honor, the manner in which the case has developed pursuant to 5 U.S.C. 7702, Mr. Delaney was permitted to file both actions because he hadn't had a decision within 120 days from the MSPB. However, just given the way that the case- From the MSPB or from the EEO? I thought that he proceeded first to the agency EEO, right? He requested an agency decision on both issues. And didn't get that in 120 days, and then he went to the MSPB, right? I believe that the statute, Your Honor- Is the sequence correct? The sequence, we believe he was permitted to file the, I'm sorry, the sequence- Well, why don't you go ahead with what you were saying? I interrupted. We believe that he was permitted to file both cases. The manner in which this case is developed, the case has substantially gone through discovery, discovery closed in December of 2008 in the district court, and this court, in the MSPB's decision, would have substantially litigated the same issues. So in that matter, he's already chosen his forum, which would be the district court, to litigate these issues. They fully addressed the issues, and we believe that should preclude further review with the MSPB. Even if he proceeded- First in the MSPB, and only later in the district court. Yes, Your Honor. What is the MSPB to do in that situation there? They said- Presumably, the case comes up on day one in the MSPB. They either do or don't have jurisdiction. It isn't your contention, is it, that the MSPB has jurisdiction, but if an action is later filed in the district court, that the MSPB loses jurisdiction, or at least if the district court action seems to be proceeding apace, that somehow the jurisdiction is taken away from the MSPB. That's not your position, is it? The position is that where the case has been substantially litigated, it would be a ground for the MSPB setting aside jurisdiction. Then that is your position, the one I just laid out, thinking that that was- Well, okay. The government's position is that the MSPB is ousted of its jurisdiction because of the later filed district court case. Which has gone through the full litigation process. Okay. If the court has nothing further, we respectfully request that the court affirm the decision of the Merit Systems Protection Board. Thank you very much. Do you want to have a couple of minutes, please? Your Honor, there's just three quick points I want to bring up. There is absolutely no thing as a temporary medical decertification. You're either decertified or you're not. Again, typically when you get a current status report, you fill it out, you're still working radar, you're still working safety-related duties. If there's a problem with that, then you're medically decertified. Medical decertification, the presumption is that it's permanent. The burden's on you to prove that it's not. There's no such thing as a temporary decertification. Just get us a note, buddy, and you'll be back working. That's not the case. The burden is on you to prove that you can work safety-related duties. With regard to the jurisdiction, I believe what the court is getting at is absolutely right. What they're asserting is now that we've filed in the district court, we're out with the MSPB. That is not the case. If there's a problem with the choice of form, it's a decision for the Eastern District of New York. In fact, if the position of the government here is that we can't proceed with this matter in front of the MSPB, well, they're making the same argument in the district court. They have a motion for summary judgment that their papers will be filed tomorrow and in pre-motion submissions to the court, they've stated that one of their arguments is going to be, since we're here, we can't be there. Now they're arguing, since we're there, we can't be here. The government briefly mentioned that they believe that this and the leave without pay was not a reason for Mr. Delaney to resign. I think, again, you have to look, and the law says you look at the totality of the circumstances, being criminally, civilly investigated, administrative leave terminated, reinstated, the next day medically decertified, no answer on your request for leave, and then you get a pay which is completely wrong. All of those things amount to, I believe, a reasonable person in Mr. Delaney's shoes would have felt compelled to resign. Thank you very much, Your Honor. All right, thank you. Case is submitted. All rise. The Honorable Court is adjourned until tomorrow morning at 10 o'clock. Nice meeting you.